IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRAIG STEVEN HOWARD,

        Plaintiff,

vs.                                  No. CIV 00-1468 LCS

THE DOÑA ANA COUNTY
DETENTION CENTER, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Partial Summary Judgment (*Doc. 11*), filed March 1, 2001. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U. S. C § 636(c), and having considered the pleadings, submissions, relevant law, and being otherwise fully advised, finds that this Motion is well-taken and should be GRANTED.

### I. Background

1.      The following statement of facts is set forth in the light most favorable to the Plaintiff, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir.1997). On November 5, 1998, Craig Howard (hereinafter "Howard") was involved in an altercation with other inmates at the Doña Ana County Detention Center. (Exs. C, D and E of Martinez Report). The fight took place in "G Pod dayroom four," a common area shared by all inmates which is closed off by a locked doorway. (Ex. B to Martinez Report).

2.      Reports indicate that Lieutenant Cardon and Officer Hinojosa approached the dayroom when they recognized a verbal altercation between several inmates. (Exs. C, D, and E).

The altercation quickly escalated into a physical affray involving approximately nine inmates. *Id*. One of the inmates appeared to have a broom handle and was going after Howard. (Ex. C). The Defendants assert that in accordance with policies and procedures, Cardon and Hinojosa radioed for back-up and medical assistance before entering the dayroom to breakup the fight. (Ex. C, D, E and I). According to Howard, once the physical affray started, he approached the door and asked Lieutenant Cardon to open it and she did not. (*Doc. 13*).

  3. Once other officers arrived, the dayroom door was opened and both the Plaintiff and another inmate were pulled out and given medical treatment (Exs. D and E). Howard sustained scrapes on his face and back and an injury to his thumb. (Ex. J). That night, Melanie Benavidez, a medical technician, called Dr. Laura Miller. Dr. Miller advised her to give the Plaintiff Tylenol for his pain, provide ice for the swelling, and to bandage and elevate his hand. (Ex. J). The next morning, Dr. Miller applied a splint and an ace bandage to the Plaintiff's hand. (Ex. K). The Plaintiff asserts that his request for an x-ray was denied and that he was later placed back into his cell. (*Doc. 13*). Howard also states that after multiple requests, his hand was finally x-rayed four days after the incident. *Id*

  4. On November 13, 1998, Howard underwent surgery and received pins in his hand in order to stabilize the fracture. (Ex. O and *Doc. 13*). After the surgery, Howard contends he was refused prescribed pain medication but was given over-the-counter Tylenol. (*Doc. 13*). He also states that the doctor refused to prescribed pain medication in light of inmates abusing such drugs. Howard was transported to the surgeons' office for a follow-up visit on November 16, 1998 and given more Tylenol for his pain. The Defendants assert that during the Plaintiff's recovery, he repeatedly removed his splint and pulled at the pins in his hands. (Exs. K and L).

5.	Howard further alleges that the officers at Doña Ana County Detention Facility were on notice of the danger posed to Howard due to previous altercations with Mexican inmates.[1] In particular, Howard states that once he was placed in C-2 Pod, the Mexican inmates complained to the officers that they did not want to be housed with a Black man. On another occasion, Howard states that the Officers had to break up another incident where Mexican inmates surrounded him.(*Doc. 13*).

6.	On September 26, 2000, Howard filed a Civil Complaint for Torts in the Third Judicial District of New Mexico. In that complaint, Howard alleged the following claims: (1) deliberate indifference to his general safety; (2) deliberate indifference to his medical needs; and (3) gross negligence on part of the security officers for failing to maintain safe environment and on part of the medical department for failure to provide effective medical attention. The Defendants subsequently filed a Notice of Removal to federal court on October 23, 2000. Their grounds for removal were based on the Plaintiff's two "deliberate indifference" claims.[2] These claims, as alleged by the Plaintiff and interpreted by the Court, constitute deliberate indifference to his safety, in violation of the Eighth Amendment ban on cruel and unusual punishment.

## II. Standards for Summary Judgment

7.	Summary judgment is appropriate when the moving party can demonstrate that

---

[1]	Presumably citizens of Mexico.

[2]	In an Order Determining Subject-Matter Jurisdiction, I found that "[w]ith respect to 42 U.S.C. §1983, the Supreme Court has ruled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.'" *Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976) (citing *Gregg v. Georgia*, 428 U.S. 154, 182-83 (1976));See also *Fleming v. Uphoff,* 210 F.3d 389 (10th Cir. 2000)(stating that 'deliberate indifference to serious medical needs of prisoners' constitutes a violation of the Eight Amendment)." (*Doc. 8*).

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. RULE CIV. PRO. 56(c); *see also Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 90 S. Ct. 1598 (1970); *see also Quaker State Minit-Lube, Inc. v. Firemans Fund Ins. Co.*, 52 F. 3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U. S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

8.      Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); *see also Biester v. Midwest Health Servs, Inc.*, 77 F. 3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. FED. RULE CIV. PRO. 56(c); *see also Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991).

9.      The mere existence of a scintilla of evidence in support of the nonmovants position is insufficient to create a dispute of fact that is genuine. *See Lawmaster v. Ward*, 125 F. 3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See Anderson*, 477 U. S. at 249. Thus, the courts inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one- sided that one party must prevail as a matter of law. *Id.* at 251-52. The court in considering a motion for summary judgment construes the factual

record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Perry v. Woodward*, 199 F. 3d 1126, 1131 (10th Cir. 1999), cert. denied, __ U. S. __, 120 S. Ct. 1964 (2000).

### III. Analysis

10.     In the Plaintiff's complaint, Howard asserts that the officers of the Doña Ana County Detention Facility failed to perform their duties and were deliberately indifferent to his safety while he was engaged in a fight with other inmates. Howard asserts the Defendants were deliberately indifferent with respect to his medical needs as well. At the time the Plaintiff was assaulted, he was not a convicted prisoner;  he was a pretrial detainee. Pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861 (1979). In determining whether the Plaintiff's rights were violated, how ever, a court should apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983. *See Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir.1996).* Therefore, even though the Plaintiff is a pretrial detainee, the deliberate indifference standard as applied in Eighth Amendment cases applies in this case as well. *See Lopez v. LeMaster*, 172 F. 3d 756, 762 (10th Cir. 1999) (applying deliberate indifference standard used in Eighth Amendment cases to claims for failing to prevent assault and for failure to respond to detainee's medical needs).

11.     In the Plaintiff's first claim, he asserts that the officers of the Doña Ana County Detention Facility, particularly Lieutenant Cardon and Officer Hinojosa, failed to perform their duties and were deliberately indifferent to his safety while he was engaged in a fight with other

inmates. The Plaintiff also claims that the prison officials were on notice of the animosity directed towards Howard from fellow Mexican inmates.

12. A prisoner has the right under the Eighth Amendment's ban on cruel and unusual punishment principle to be reasonably protected from constant threats of violence from other inmates. *See Riddle v. Mondragon*, 83 F. 3d 1197, 1204 (10th Cir. 1996). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1976 (1994) (quotation omitted). "[T]he failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison official's conduct amounts to an obdurate and wanton disregard for the inmate's safety." *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir.1992). Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *See Riddle*, 83 F.3d at 1204 (quoting *Farmer*, 511 U. S. at 834).

13. To recover on an Eighth Amendment claim for failure to protect, an inmate must allege and prove two elements: (1) that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) that the prison official has a sufficiently culpable state of mind, indicative of deliberate indifference to the inmates health and safety. *See Riddle*, 83 F.3d at 1204; *see also Grimsley v. MacKay*, 93 F. 3d 676, 680 (10th Cir. 1996). The first element is an objective test. The Eighth Amendment deprivation alleged must be, from an objective point-of-view, "sufficiently serious" to warrant judicial intrusion. *See Farmer*, 511 U. S. at 834. The second element of the Eighth Amendment claim is a subjective test; one where "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must he must also draw the inference." *Id.* at 837.

14.     The question to be decided on this motion, therefore, is whether a genuine issue of material fact exists as to the elements of the Eighth Amendment cause of action; that is, whether there is sufficient evidence from what a jury could find that Howard was subjected to a substantial risk of serious harm, and whether the prison officials were aware of facts from which they could and did draw the inference that such a risk existed, but were nevertheless deliberately indifferent to Howard's plight.

15.     In this case, the Plaintiff alleges that Officers Cardon and Hinojosa failed to intervene when other inmates were fighting with the Plaintiff; thus being deliberately indifferent to his safety. Assuming there is sufficient evidence establishing a substantial risk of serious harm the night of the fight, the court must still interpret the "deliberate indifference" standard posed in *Riddle* and *Farmer* and look to whether the officials' actions were taken to restore discipline or whether they acted "'maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). While the Eighth Amendment imposes the requirement on prison officials to restore control in tumultuous situations, *see Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir.1993), "officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state." *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir.1992). Under the deliberate indifference standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

16. The Defendants assert that Cardon and Hinojosa acted within the Detention Center's policies and procedures. There were approximately nine inmates engage in a physical fight and there were only two officers immediately available. When the two officers became aware of the fight, they radioed for assistance and then tried to vocally stop the fight through the glass doors. Once other officers arrived, they immediately opened the door to the dayroom and broke up the fight. The Defendants argue that they took "reasonable measures" in order to abate the fight.

17. I find the facts, as viewed in a light most favorable to the Plaintiff, show no deliberate indifference on the part of prison officials. Although the Defendants knew Plaintiff faced a risk of harm, the measures they took to abate that harm were reasonable. It would have been unreasonable for the Cardon and Hinojosa to enter the dayroom amongst a fight with approximately nine inmates. In addition, there is insufficient evidence to go to the jury on the issue of whether the prison officials, particularly, Cardon and Hinojosa, were aware of facts which would lead them to draw the inference that Howard's presence in G Pod and the G Pod dayroom placed him at substantial risk of serious harm. As noted above, the standard on the second prong of the deliberate indifference test is a subjective one: it is not enough that the official should have been aware of the risk of serious harm; rather, he or she must actually have known of that risk. *See Craig v. Eberly*, 164 F. 3d 490, 495-96 (10th Cir. 1998). Summary judgment can be granted, "even in a case involving allegations of deliberate indifference in the prison context, if the plaintiff's allegations . . . implicate only defendant's negligence and do not

establish the more culpable state of mind necessary to support claims of the denial of a constitutional right." *White v. Colorado*, 82 F. 3d 364, 367 (10th Cir. 1996). Therefore, I find there is insufficient evidence to support the Plaintiff's claim that the Defendants were deliberately indifferent to his safety and that judgment should be granted to Defendants with respect to this claim since there is no genuine issue as to any material fact. FED. RULE CIV. PRO. 56(c).

18. In the Plaintiff's second claim, he asserts that the Doña Ana County Detention Facility's medical staff was deliberately indifferent to his medical needs. Particularly, the Plaintiff asserts that the medical staff, in particular. Dr. Miller, failed to attend to Howard's medical needs by not taking an x-ray of his hand sooner and by not prescribing pain medication.

19. "The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates. . .'." *Id.* at 832 (citing *Hudson v. Palmer,* 468 U.S. 517, 526-527, 104 S.Ct. 3194, 3200 (1984). As stated above, the deliberate indifference standard has two components, one objective and one subjective. *See Riddle*, 83 F.3d at 1204; *see also Grimsley v. MacKay*, 93 F. 3d 676, 680 (10th Cir. 1996). In order to prevail on this claim, the Plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they must have known about the serious medical need and intentionally refused to provide medical care. S*ee Farmer*, 511 U. S. at 834.

20  A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem, or could result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted in substantial harm. *See Olson v. Stotts*, 9 F. 3d 1475, 1477 (10th Cir. 1993); *see also White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996); *see also Thompson v. Hamilton*, 127 F. 3d 1109 (Table, text in Westlaw), No. 97-6084, 1997 WL 639320, at *1 (10th Cir. Oct. 14, 1997). "Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a culpable state of mind to support his claim of denial of a constitutional right. *See White*, 82 F.3d at 367.[3]

21.  Plaintiff has shown neither a serious medical need, nor the requisite culpable state of mind on the part of the Defendants. He has not alleged that any delay in rendering treatment to his wound resulted in substantial harm, nor does the record show that it was apparent to Defendants, at any time during his stay at the Doña Ana County Detention Facility, that delay could result in a lifelong handicap or permanent loss. The record indicates, and the Plaintiff concedes, that he was seen by Dr. Miller the morning after the fight and that Dr. Miller applied a splint and an ace bandage to the Plaintiff's hand. (Ex. K). Howard was also given Tylenol for the pain. Although an x-ray of the Plaintiff's hand was taken four days after the fight, Howard fails to

---

[3] In the medical context, "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U. S. at 105-06.

allege any substantial harm that resulted from the lengthy wait. The record reveals that Howard sustained a fracture to his right thumb. (Ex. L). It also indicates that Howard underwent surgery to correct the fracture. (Ex. P).[4]

22.     The Plaintiff also asserts that the detention facility's medical personal failed to attend to his medical needs by giving him Tylenol instead of prescribing pain medication. While a deliberate refusal to provide medical attention to a prisoner may give rise to an eighth amendment claim which is cognizable under 42 U.S.C. §1983, a disagreement over a particular course of treatment does not. *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997); *see also Perkins v. Kansas Dept. of Corrections*, 165 F.2d 803, 811 (10th Cir. 1999); *see also Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir.1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation ); *see also Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir.1985) (prisoner's disagreement about treatment of pain in his lower back and arm did not constitute an Eighth Amendment violation). Nothing in the record indicates that the Defendants acted deliberately to inflict pain unnecessarily and wantonly. Moreover, the Plaintiff admits that Doctor Miller refused to prescribe medication in order to avoid drug abuse within the facility. (Pl. Res. at 5). Plaintiff's allegations that the medical staff refused to give him medication after his hand injury does not amount to intentional interference with prescribed medical treatment or to deliberate indifference to plaintiff's serious medical needs.

---

[4] Although the Plaintiff argues both the medical staff and Dr. Miller refused prescription medication to relieve his pain, they did in fact provide him with Tylenol. The public policy reason for keeping prescription drugs out of the detention facility's general population outweighs the Plaintiff's need for pain medication.

23. When viewing the facts in a light most favorable to trial on the merits, it is apparent there is no evidence rising to the level of Fourteenth Amendment violation. *See Riddle*, 83 F.3d at 1203; *see also Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (a mere delay in medical treatment does not constitute a constitutional violation unless it can be shown that the delay was the result of deliberate indifference and resulted in substantial harm); *see also Grant v. Bernalillo County Detention Center*, No. 98-2193, 1999 WL 157415 (10th Cir. March 23, 1999) (a delay in providing medical care does not violate the Eighth Amendment unless the delay caused substantial harm by further injuring the inmate). There is no evidence of Howard's medical needs that rises to the level of "sufficiently serious," nor is there any evidence of the medical staff's culpability rising to the level of "intentional refusal." Therefore, I find this claim should be dismissed because there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law. FED. RULE CIV. PRO. 56(c)**.**

24. Jurisdiction in this action was founded solely upon 28 U.S.C. § 1331 (federal question). The sole federal question was based on 28 U.S.C. §1983.[5] Section 1983 applies to persons who deprive others of a right under the United States Constitution or the laws of the United States and who act under color of state law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Thus, § 1983 is inapplicable to Plaintiff's claims under state law. As this case was at a relatively early stage of pretrial development, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state gross negligence claims. *See Carnegie- Mellon Univ. v.*

---

[5] The Court originally declared jurisdiction in an Order filed December 14, 2000 (*Doc. 8*). In that Order, I stated that "in view of the liberal pleading requirements of pro se plaintiffs, *see e.g. Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), the Court finds it has subject-matter jurisdiction with respect to plaintiff's claims pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1331 (federal question jurisdiction)."

*Cohill*, 484 U. S. 343, 350 (1988); *see also United Mine Workers v. Gibbs*, 383 U. S. 715, 726 (1966)(the decision whether to exercise supplemental jurisdiction over the state law claim after the federal claim has been dismissed is a matter of judicial discretion that takes into consideration comity, judicial efficiency, convenience, and fairness to the litigants.) Therefore, since the Defendant's Motion for Partial Summary Judgment will be granted with respect to all of the Plaintiff's federal claims, I find that all of the Plaintiff's remaining state claims should be remanded to state court.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Partial Summary Judgment filed March 1, 2001 (*Doc. 11*) is **GRANTED.**

**IT IS FURTHER ORDERED** that the federal legal claims listed as (a), "deliberate indifference "with respect to his medical needs, and (b), "deliberate indifference" with respect to his safety, in the Plaintiff's Complaint as the same may arise under 28 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the remaining state law claims listed as (c), gross negligence on part of the security officers and medical department, in the Plaintiff's Complaint are **REMANDED** to the Third Judicial District Court, County of Dona Ana, State of New Mexico.

**ORDERS CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**